1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TYRONE BROWN, | ) | Case No. CV 08-6821 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.   SUMMARY

On October 20, 2008, plaintiff Tyrone Brown ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits. The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The
Court has taken both motions under submission without oral argument. See Fed.
R. Civ. P. 78; L.R. 7-15; October 23, 2008 Case Management Order ¶ 5.
///

1

1  Based on the record as a whole and the applicable law, the decision of the
2  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3  ("ALJ") regarding plaintiff's ability to do work are supported by substantial
4  evidence and are free from material error.[1]

5  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
6  **DECISION**

7  On February 14, 2006, plaintiff, a former dishwasher/bus boy, filed an
8  application for  Supplemental Security Income Benefits.  (Administrative Record
9  ("AR") 82-84, 107).  Plaintiff asserted that he became disabled on March 16,
10 2004, due to "mental illness, depression, pain in back, leg, arm, seizures, former
11 alcoholic, can remember events that took place years ago, but not present events,
12 hear voices, claustrophobia, lack of concentration."  (AR 82, 106).  The Social
13 Security Administration denied plaintiff's application initially and on
14 reconsideration.  (AR 49-54).  Plaintiff requested a hearing, which an ALJ
15 conducted on October 2, 2007.  (AR 8, 24-48).   The ALJ examined the medical
16 record and heard testimony from plaintiff (who was represented by counsel), and a
17 vocational expert.  (AR 24-48).

18 On October 16, 2007, the ALJ determined that plaintiff was not disabled
19 through the date of the decision.  (AR 12-22).  Specifically, the ALJ found:
20 (1) plaintiff suffered from the following severe combination of impairments:
21 "depressive disorder; history of alcoholism with history of alcohol related
22 seizures; lumbar strain and bilateral bunions" (AR 14); (2) plaintiff's impairments,
23 including his substance use disorder, met the listed impairments for 12.04 and

24
25
─────────────────
26 [1]The harmless error rule applies to the review of administrative decisions regarding
   disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
27 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
   Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
28 application of harmless error standard in social security cases).

1  12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 15); (3) if plaintiff

2  stopped the substance use, plaintiff would continue to have a severe impairment or

3  combination of impairments, but those impairments would not meet or medically

4  equal any of the listed impairments (AR 17); (4) if plaintiff stopped the substance

5  use, he would have the residual functional capacity to perform a limited range of

6  medium work[2] (AR 18); (5) plaintiff had no past relevant work (AR 21); and (6) if

7  plaintiff stopped the substance use, there would be a significant number of jobs in

8  the national economy that he could perform, specifically a hand packager and

9  assembler (AR 21-22).

10      The Appeals Council denied plaintiff's application for review.  (AR 4-5).

11  **III.   APPLICABLE LEGAL STANDARDS**

12      **A.   Sequential Evaluation Process**

13      To qualify for disability benefits, a claimant must show that he is unable to

14  engage in any substantial gainful activity by reason of a medically determinable

15  physical or mental impairment which can be expected to result in death or which

16  has lasted or can be expected to last for a continuous period of at least twelve

17  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

18

19      [2]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
    carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the

20  Administration] determine[s] that he or she can also do sedentary and light work."  See 20 C.F.R.
    § 416.967(c).  SSR 83-10 provides in pertinent part:

21

22      The regulations define medium work as lifting no more than 50 pounds at a time
        with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range

23      of medium work requires standing or walking, off and on, for a total of
        approximately 6 hours in an 8-hour workday in order to meet the requirements of

24      frequent lifting or carrying objects weighing up to 25 pounds.  As in light work,
        sitting may occur intermittently during the remaining time.  Use of the arms and

25      hands is necessary to grasp, hold, and turn objects, as opposed to the finer
        activities in much sedentary work, which require precision use of the fingers as

26      well as use of the hands and arms.

27

28  See SSR 83-10.

3

1    § 423(d)(1)(A)).  The impairment must render the claimant incapable of

2    performing the work he previously performed and incapable of performing any

3    other substantial gainful employment that exists in the national economy.  Tackett

4    v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

5         In assessing whether a claimant is disabled, an ALJ is to follow a five-step

6    sequential evaluation process:

7        (1)   Is the claimant presently engaged in substantial gainful activity?  If

8              so, the claimant is not disabled.  If not, proceed to step two.

9        (2)   Is the claimant's alleged impairment sufficiently severe to limit

10             his ability to work?  If not, the claimant is not disabled.  If so,

11             proceed to step three.

12       (3)   Does the claimant's impairment, or combination of

13             impairments, meet or equal an impairment listed in 20 C.F.R.

14             Part 404, Subpart P, Appendix 1?  If so, the claimant is

15             disabled.  If not, proceed to step four.

16       (4)   Does the claimant possess the residual functional capacity to

17             perform his past relevant work?[3]  If so, the claimant is not

18             disabled.  If not, proceed to step five.

19       (5)   Does the claimant's residual functional capacity, when

20             considered with the claimant's age, education, and work

21             experience, allow him to adjust to other work that exists in

22             significant numbers in the national economy?  If so, the

23             claimant is not disabled.  If not, the claimant is disabled.

24   Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

25   Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden

26

27

28       [3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

1  of proof at steps one through four, and the Commissioner has the burden of proof

2  at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001)

3  (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of

4  proving disability).

5       If the ALJ determines that a claimant is disabled and there is medical

6  evidence that the claimant suffers from drug addiction or alcoholism, the

7  regulations dictate that the ALJ conduct a drug and alcohol analysis (a "DAA") to

8  determine which of a claimant's identified limitations would remain if the

9  claimant stopped using drugs or alcohol.  See 20 C.F.R. § 416.935(b).  If the

10  remaining limitations would be disabling, the claimant's substance abuse is not a

11  contributing factor material to his disability.  If the remaining limitations would

12  not be disabling, then the claimant's substance abuse is material and benefits must

13  be denied.  See 20 C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(C) ("An individual

14  shall not be considered to be disabled. . . if alcoholism or drug addiction would. . .

15  be a contributing factor material to the Commissioner's determination that the

16  individual is disabled."); see also Parra v. Astrue, 481 F.3d 742, 746-47 (9th Cir.

17  2007) (discussing same), cert. denied, 128 S. Ct. 1068 (2008); Bustamante, 262

18  F.3d at 955 (DAA must be conducted after a finding of disability under the

19  sequential evaluation process).

20       **B.    Standard of Review**

21       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

22  benefits only if it is not supported by substantial evidence or if it is based on legal

23  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

24  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

25  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

26  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

27  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

28  ///

5

1  mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing

2  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

3        To determine whether substantial evidence supports a finding, a court must

4  "'consider the record as a whole, weighing both evidence that supports and

5  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>

6  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

7  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

8  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

9  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

10  **IV.   DISCUSSION**

11        Plaintiff contends that the ALJ erred in considering the opinions of

12  nonexamining state agency physician, Dr. Y.C. McDowell, who completed a

13  Mental Residual Functional Capacity Assessment Form for plaintiff.  Plaintiff

14  alleges that Dr. McDowell found greater, more detailed limitations than the ALJ

15  found to exist in determining plaintiff's residual functional capacity, and the ALJ

16  should have incorporated such limitations into the residual functional capacity

17  determination.  Without Dr. McDowell's specified limitations, plaintiff alleges the

18  ALJ's hypothetical question to the vocational expert was incomplete and the

19  ALJ's opinion that plaintiff can perform work at step five based on the vocational

20  expert's testimony was in error.  (Plaintiff's Motion at 4-6).  As explained below,

21  this Court disagrees.  Substantial evidence supports the ALJ's conclusion that

22  plaintiff can work.

23        **A.   The Medical Record**

24        The medical record includes mental health treatment records from the Los

25  Angeles County Department of Mental Health Downtown Mental Health Center

26  from August 2005 through August 2007.  (AR 165-177, 218-237).  At the outset,

27  plaintiff complained of depression, poor sleep, poor appetite, feelings of

28  hopelessness, loneliness, withdrawal, and problems with anger and concentration/

memory. (AR 172). Plaintiff reported hearing voices since 2003, and seeing shadows since 1995. (AR 172). Plaintiff also reportedly believed that others were out to get him. (AR 172).

Plaintiff claimed to have suffered seven seizures, and reported a history of being hit in the head with a hammer and lower back pain from falling down a ladder. (AR 173).[4] Plaintiff acknowledged a history of alcohol and marijuana use and about twenty alcohol-related arrests. (AR 174-75). Plaintiff had been homeless on and off for the past thirty years. (AR 175). Plaintiff's intake examiner initially diagnosed plaintiff with major depressive disorder with psychotic features and polysubstance dependence. (AR 177).

Thereafter, on August 15, 2005, Dr. Ed Cavanagh, M.D., evaluated and diagnosed plaintiff with depression, not otherwise specified, and "ETOH" dependence, and prescribed Lexapro. (AR 170). Plaintiff reported drinking "every day" at one point and having his last drink two weeks earlier. (AR 169). Dr. Cavanagh assigned plaintiff a Global Assessment of Functioning ("GAF") score of 52.[5] Treatment notes indicate that plaintiff continued to take Lexapro

---

[4]The record reflects that on November 25, 2004, plaintiff visited the emergency room at the Los Angeles County/USC Medical Center and complained of lower back pain. (AR 153-54). Plaintiff reported a history of substance abuse. (AR 153 (noting "EHOH Abuse")). Plaintiff was prescribed Motrin and Vicodin for his pain. (AR 153). The record also reflects that in 2005, plaintiff visited the emergency room at the Martin Luther King Drew Medical Center on three occasions. (AR 156-63). Plaintiff complained of having chronic back pain for two years. (AR 159). On examination, plaintiff had a full range of motion in his spine and a straight leg raising test was negative. (AR 160).

[5]A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereinafter "DSM IV"). A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM IV at 34.

1  with positive results.  (AR 165-68).  Notes from a January 2006 visit reflect that

2  plaintiff had been clean and sober for eight to nine months.  (AR 226).  However,

3  notes from a September 2006 visit reflect that plaintiff reportedly became clean

4  and sober only two months earlier.  (AR 223).

5       On September 11, 2007, one of plaintiff's treating physicians, Dr. James R.

6  Jones from the Downtown Mental Health Center, completed a "Medical Statement

7  Concerning Depression for Social Security Claim."  (AR 239-41).  Dr. Jones

8  diagnosed plaintiff with bipolar disorder, type I, and assigned a current GAF of

9  48.[6]  (AR 239).  Dr. Jones circled that plaintiff has "marked" restrictions of

10 activities of daily living and difficulty maintaining social functioning, and circled

11 that deficiencies in concentration would result in "frequent failure to complete

12 tasks in a timely manner," with "[r]epeated [e]pisodes of deterioration or

13 decompensation in work or work-like settings[.]"  (AR 239).  Dr. Jones checked

14 boxes indicating that plaintiff had "marked" impairments in all of his work-related

15 abilities except the ability to carry out short and simple instructions.  (AR 240-41).

16 Dr. Jones commented:

17       The severity and frequency of Mr. Brown's symptoms significantly

18       impair his ability to be successfully gainfully employed.  He is

19       manifesting memory impairment, concentration difficulty, thoughts

20       about suicide and is extremely lethargic.  Another significant

21       impediment to gainful employment is the fact that he is functionally

22       illiterate.

23 (AR 241).[7]  Dr. James made no mention of plaintiff's alcohol use.[8]

24 ─────────────────

25       [6]A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation,

26 severe obsessional rituals, frequent shoplifting) or any serious impairment in social,
   occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.

27       [7]In his initial assessment at the Downtown Mental Health Center, plaintiff reported that

28 he had completed high school, was in regular school, and had average grades.  (AR 175).

(continued...)

8

1        Plaintiff underwent a Complete Internal Medical Evaluation by Dr. James

2   Paule on or about May 10, 2006.  (AR 179-84).  Dr. Paule interviewed plaintiff

3   but reviewed no medical records.  (AR 179).  Although plaintiff complained of

4   suffering from "seizures" for three years while drinking alcohol heavily, upon

5   questioning, plaintiff explained that by "seizures" he meant lost consciousness and

6   admitted that he never had a "seizure" when he had been off alcohol completely.

7   (AR 179).  Two MRIs of plaintiff's brain were negative.  (AR 180).  Plaintiff

8   reported that he began drinking daily in 1977, but decreased his alcohol intake

9   over the past two years and claimed to only drink a six pack of beer on weekends.

10  (AR 180).  Plaintiff also reported suffering for two years from lumbar pain that did

11  not radiate.  (AR 180).

12

13        [7](...continued)

14  Elsewhere, plaintiff reported that he likes to read.  (AR 119, 123).

15        [8]The ALJ rejected Dr. Jones's check-the-box evaluation, reasoning:

16        This report is so extreme and so inconsistent with the evidence of record,

17        especially [Dr. Jones'] own treatment notes, as to be implausible.  Not only do his
          notes show that the claimant is doing well and is asymptomatic on his medication,

18        but the claimant has never expressed thought of suicide to Dr. Jones or to any
          other examiner at this clinic.  In addition, there is no evidence that the claimant is

19        functionally illiterate. . . . There always exists a possibility that a doctor may
          express an opinion in an effort to assist a patient with whom he sympathizes or

20        maybe the patient is quite insistent in seeking supportive notes.  While it is
          difficult to confirm the presence of such motives, they are more likely in

21        situations where the opinion in question departs substantially from the rest of the
          evidence of record as in this case.  I cannot give controlling weight to this opinion

22        which is completely unsupported by the evidence.

23

24  (AR 20).  Plaintiff does not challenge the ALJ's rejection of Dr. Jones' opinion.  The Court

25  notes that the ALJ could properly reject Dr. Jones' treating physician opinion, which conflicts
    with other examining physician opinions, by making findings setting forth specific, legitimate

26  reasons for doing so that are based on substantial evidence in the record, as the ALJ did here.

27  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 957 (9th
    Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and

28  conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and
    quotations omitted).

Dr. Paule's noted no abnormalities in his examination of plaintiff.  (AR 181-83).  Dr. Paule diagnosed plaintiff with seizure disorder, depression by history, history of alcoholism, bilateral bunions, and lumbar strain.  (AR 184).   Dr. Paule opined that plaintiff could perform medium work with no postural, manipulative, visual or communicative limitations.  (AR 184).  Dr. Paule noted that plaintiff should avoid machinery and heights and should not drive.  (AR 184).[9]

Plaintiff underwent a Complete Psychiatric Examination on or about August 7, 2006, by Dr. Christopher Ho.  (AR 185-89).  Plaintiff reported a ten or fifteen year history of back problems due to a job related injury while working construction, suffering from depression for about thirty years, and drinking alcohol heavily when depressed.  (AR 185-86).  Plaintiff reportedly stopped drinking six weeks before his exam.  (AR 185).

Plaintiff said he sometimes became violent and angry, talked to himself, could not concentrate or remember things, had difficulty sleeping and had a poor appetite.  (AR 186).  Plaintiff claimed he had trouble maintaining a regular work schedule due to his alcohol use.  (AR 186).  Dr. Ho diagnosed plaintiff with a history of alcohol abuse and dependence and depressive disorder, not otherwise specified, and gave plaintiff a current GAF of 45, with a GAF of 60 for the past year.  (AR 188).  Dr. Ho noted that it was possible that plaintiff's alcohol use had contributed significantly to his history of depression.  (AR 188).

///

///

---

[9]State agency physician, Dr. V.A. Casillas, reviewed plaintiff's treating/examining source statements and completed a Physical Residual Functional Capacity Assessment Form for plaintiff dated September 7, 2006.  (AR 206-10).  Like Dr. Paule, Dr. Casillas found plaintiff capable of performing medium work, avoiding hazards (machinery, heights, etc.), given a "seizure precaution."  (AR 209).  Dr. Casillas noted that plaintiff did have a lumbar spine strain that limited his lifting and carrying abilities and that plaintiff appeared undernourished.  (AR 210).

1   Dr. Ho concluded that plaintiff:

2   can follow simple instructions but would have difficulties with more

3   complex tasks.  He would have difficulties working over long-term

4   periods, primarily due to his alcohol use.  The patient was able to do

5   most tasks on the mental status exam.  He interacted appropriately

6   today.  He can arrange transportation.  His history of substance abuse

7   has limited his ability to function.

8   (AR 188).  Dr. Ho gave plaintiff a "guarded" prognosis, but noted that plaintiff

9   was able to make simple social, occupational and personal adjustments.  (AR 188).

10          Nonexamining state agency physician, Dr. Y.C. McDowell, completed

11  Psychiatric Review Technique and Mental Residual Functional Capacity

12  Assessment forms for plaintiff.  (AR 190-205).  Dr. McDowell noted that plaintiff

13  suffered from a depressive disorder and alcohol abuse and dependence, and

14  checked boxes indicating that plaintiff would have mild restrictions of daily living,

15  moderate difficulties maintaining social functioning, and maintaining

16  concentration, persistence, or pace.  (AR 193, 198, 200).  More specifically, Dr.

17  McDowell checked boxes indicating that plaintiff would have moderate

18  limitations in the ability to understand and remember and carry out detailed

19  instructions, in the ability to maintain attention and concentration for extended

20  periods, and in the ability complete a work week and to perform activities within a

21  schedule and maintain a regular attendance and be punctual.  (AR 203-04).  Dr.

22  McDowell also checked boxes indicating that plaintiff would have moderate

23  limitations in his ability to interact appropriately with the general public, to accept

24  instructions and respond appropriately to criticism, to get along with coworkers or

25  peers, to maintain socially appropriate behavior, and to set realistic goals or make

26  plans independently of others.  (AR 204).  In a narrative, Dr. McDowell explained:

27  ///

28  ///

11

1   The claimant is able to remember, understand and perform simple and
2   repetitive tasks.  Although the claimant has a problem with alcohol
3   dependence/abuse he is still able to maintain concentration,
4   persistence and pace to do unskilled work over a forty hour work
5   week.  The claimant is isolative/withdrawn as well as having
6   aggressiveness and anger towards others.  Therefore he should work
7   in a job setting with limited contact.  However, he is able to adapt to
8   changes in the work place.

9   (AR 205).

10   **B.    The ALJ's Residual Functional Capacity Determination**

11   As summarized above, the ALJ found that plaintiff could perform medium
12   work with some limitations.  Specifically, the ALJ determined that plaintiff:
13   would be able to perform simple work involving simple judgments
14   and decisions, but would be unable to perform detailed or complex
15   work involving detailed or complex judgments or decisions.   He
16   would be unable to have more than occasional contact with
17   supervisors, co-workers or the public, and would be unable to work at
18   jobs requiring a production rate pace with production quota measured
19   periodically throughout the work day, but quotas can be met at the
20   end of the work day or work week.  He should work in a job
21   environment with less than occasional changes in the environment
22   where these changes are only simple in character.  He should avoid
23   concentrated exposure to hazards including unprotected heights and
24   dangerous machinery.

25   (AR 18).   In making this determination, the ALJ summarized the findings from
26   Dr. Ho's examination and noted that the ALJ's residual functional capacity
27   assessment was consistent with Dr. Ho's opinion.  (AR 20).  The ALJ also noted
28   that the residual functional capacity conclusions reached by the state agency

12

1   physicians (including Dr. McDowell), supported a finding of not disabled and

2   concurred with such assessments.  (AR 21, citing the state agency physician

3   opinions at AR 190-205, 211-16)).

4        Plaintiff does not dispute the ALJ's determination that he could perform

5   medium work.  Rather, plaintiff asserts that the ALJ's residual functional capacity

6   assessment does not adequately incorporate Dr. McDowell's check-the-box

7   assessment.  (Plaintiff's Motion at 5-6).[10]

8        **C.   The ALJ Properly Evaluated Medical Opinion Evidence**

9        In Social Security cases, courts employ a hierarchy of deference to medical

10  opinions depending on the nature of the services provided.  Courts distinguish

11  among the opinions of three types of physicians:  those who treat the claimant

12  ("treating physicians") and two categories of "nontreating physicians," namely

13  those who examine but do not treat the claimant ("examining physicians") and

14  those who neither examine nor treat the claimant ("nonexamining physicians").

15  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

16  treating physician's opinion is entitled to more weight than an examining

17  physician's opinion, and an examining physician's opinion is entitled to more

18  weight than a nonexamining physician's opinion.[11]  See id.

19  ///

20

21      [10]Plaintiff also appears to argue that the ALJ's single statement regarding the state agency
22  physicians' opinions is indicative of the fact that the ALJ actually adopted all of Dr. McDowell's
    opinions, but nonetheless neglected to include such limitations in his residual functional capacity
23  determination or in the hypothetical question posed to the vocational expert.  Plaintiff's premise
    is flawed.  The ALJ's statement regarding the state agency physicians (including Dr. McDowell),
24  can reasonably be interpreted to mean that the ALJ adopted such physicians' broader assessments
    that plaintiff was not disabled, as opposed to adopting each individual opinion contained in their
25  reports.  As noted above, if the evidence can reasonably support either affirming or reversing the
26  ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.

27      [11]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
    draw bright line distinguishing treating physicians from non-treating physicians; relationship is
28  better viewed as series of points on a continuum reflecting the duration of the treatment
    relationship and frequency and nature of the contact) (citation omitted).

1    Here, the ALJ adopted a residual functional capacity assessment consistent

2    with Dr. Ho's assessment based on Dr. Ho's independent examination of plaintiff,

3    and consistent with Dr. McDowell's assessment as explained by Dr. McDowell's

4    narrative (finding that plaintiff can "maintain concentration, persistence and pace

5    to do unskilled work over a forty hour work week"), and containing many of the

6    limitations that Dr. McDowell checked on plaintiff's forms.  The ALJ need not

7    have adopted any greater limitations than he did.

8    First, opinions of consultative examiners, like Dr. Ho, are substantial

9    evidence and may be relied upon by an ALJ in determining a claimant's residual

10   functional capacity when those opinions are supported by independent clinical

11   findings.  Orn, 495 F.3d at 633.  The ALJ was entitled to rely on Dr. Ho's

12   evaluation.

13   Second, contrary to plaintiff's assertion, the ALJ did consider Dr.

14   McDowell's opinion and incorporated the opinion to the extent the ALJ deemed

15   appropriate.  The ALJ was required to do no more.  To the extent plaintiff may

16   assert that the ALJ was required to adopt all of Dr. McDowell's individual

17   opinions, the court notes that a nonexamining physician's opinion "with nothing

18   more" cannot constitute substantial evidence.  Andrews v. Shalala, 53 F.3d 1035,

19   1042 (9th Cir. 1995).  Reports of a nonexamining advisor may only serve as

20   substantial evidence when those reports are supported by other evidence in the

21   record and are consistent with such evidence.  Id. at 1042.  The boxes that Dr.

22   McDowell checked on plaintiff's forms, without more, are not substantial

23   evidence and need not have been accepted.  See Thomas v. Barnhart, 278 F.3d

24   947, 957 (9th Cir. 2002) (finding that ALJ "need not accept the opinion of any

25   physician, including a treating physician, if that opinion is brief, conclusory, and

26   inadequately supported by clinical findings") (citing Matney v. Sullivan, 981 F.2d

27   1016, 1019 (9th Cir. 1992)); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

28   1989) (same); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ

14

properly rejected doctors' opinions because they were check-off reports that did not contain any explanation for the bases of their conclusions).

To the extent plaintiff claims that the hypothetical question posed to the vocational expert was incomplete because it did not contain all of the limitations in the boxes checked by Dr. McDowell, plaintiff is not entitled to relief.  While a hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant, <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as</u> <u>amended</u> (1997) (citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995)), an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted). Because the hypothetical question the ALJ posed included all the limitations the ALJ properly found to exist, the ALJ committed no error.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 27, 2009

_____
                         /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE